UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LEAH ISBELL *individually and on behalf of all others similarly situated*, | ) ) ) |
| Plaintiff, | ) ) No. 0:22-cv-01322-WMW-DJF |
| v. | ) ) ) |
| POLARIS, INC. | ) ) |
| Defendant. | ) ) ) |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement ("Stipulation") is made and entered into by and among (1) Leah Isbell ("Plaintiff"), individually and on behalf of a collective of others similarly situated under the Fair Labor Standards Act ("FLSA"), and (2) Polaris, Inc. ("Defendant") (together, the "Parties"), by and through their respective counsel. This Stipulation, and the executed settlement agreement itself (the "Settlement Agreement" or "Agreement"), attached hereto as Exhibit A, is intended by the Parties to fully, finally, and forever discharge and settle this litigation upon and subject to the terms and conditions hereof.

### I. The Litigation

Plaintiff Isbell commenced litigation on May 17, 2022, and filed an Amended Complaint on July 1, 2022 (the "Amended Complaint"), in which she asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") on behalf of herself and an FLSA collective arising out of Defendants' alleged failure to appropriately

1

compensate members of the collective for all hours worked per workweek due to i) Defendant's timekeeping and rounding practices throughout the statutory period, and ii) the approximately two-month outage of the Kronos timekeeping system used by Defendant beginning in December 2021.

The Parties expressed a mutual interest in attempting to resolve the case at the early stages and agreed to mediate prior to engaging in full-scale litigation and motion practice. The Parties retained mediator Lynn P. Cohn, and, prior to a full-day, mediation session held on March 31, 2023, Defendant produced data and other relevant payroll information to allow the Parties to attend mediation well-informed about the claims and liabilities at issue, the strength of potential defenses, and the potential value of Plaintiff's and the collective's claims. The mediation successfully laid the framework for an agreement between the Parties, and, following additional discussions between the Parties facilitated by Ms. Cohn in the days following the March 31, 2023 mediation session, the Parties were able to reach the agreement which is reflected in in this Stipulation and attached Settlement Agreement.

## II. Defendant's Denial of Liability

Defendant expressly denies any wrongdoing or any violation of state or federal law as alleged in the Amended Complaint. However, understanding the expense inherent in continued litigation, Polaris believes the terms of the Settlement are fair and this Stipulation is in its best interest. *See* Settlement Agreement at §1.

## III. Claims of Plaintiff and Benefits of Settlement

Plaintiff believes that her asserted claims have merit. However, Plaintiff and

Plaintiff's counsel recognize the expense and length of continued litigation. Plaintiff and her counsel represent that they have conducted a thorough investigation into the facts relating to the claims asserted in the Amended Complaint and are of the opinion and belief that the settlement described herein is fair, reasonable, adequate and in the best interests of all in light of all known facts and circumstances, including the considerable expense of discovery and litigation, defenses that could be asserted by Defendants, uncertainty as to the result through continued litigation and appeal, and the risks of delay and an adverse judgment.

In light of all the foregoing, Plaintiff and her counsel believe that the settlement set forth in this Stipulation confers substantial benefits Plaintiff and the collective. Based upon their evaluation, they have determined that the settlement set forth in the Stipulation is in their best interests.

### IV. Terms of Stipulation and Settlement Agreement

NOW, THEREFORE, IT IS HERBY STIPULATED AND AGREED by the Parties, by and through their respective attorneys of record, that this action and all claims released herein shall be finally and fully compromised, settled and released, and the action shall be dismissed, with prejudice, upon and subject to the terms and conditions of this Stipulation and attached Settlement Agreement. The Parties further agree that Plaintiff's claims asserted in the Amended Complaint and the same claims of each individual who submits a Claim Form to participate in this settlement shall be dismissed, with prejudice, upon the Court's final approval of the attached Settlement Agreement and entry of judgment.

Plaintiff may hereafter discover facts in addition to or different from those which she now knows or believes to be true with respect to the subject matter of this action, but the Plaintiff expressly hereby has fully, finally, and forever settled and released any and all state or federal claims, known or unknown, suspected or unsuspected, contingent or non-contingent. The Plaintiff acknowledges, and all others who submit Claim Forms shall be deemed to have acknowledged, that the waiver and release set forth in this Stipulation and in the submitted Claim Forms were bargained for and a key element of the Settlement.

    a. The Settlement

        i. Collective Certification

The Parties hereby stipulate for settlement purposes only to the certification of an FLSA Collective. *See* Settlement Agreement at §3. The proposed collective is defined as follows:

> All individuals employed by Polaris, Inc. in its Huntsville, AL facility, from May 17, 2019, to the present and who were paid on an hourly basis and who are identified in the data produced by Defendant to Plaintiff for purposes of facilitating settlement discussions.

In so stipulating, Defendant does not waive, and instead expressly reserves, its right to challenge the propriety of certification of the FLSA collective in the event the settlement described in this Stipulation is not approved by the Court. The Parties further agree that, other than to effectuate the Settlement of this action in this jurisdiction, the certification of the FLSA Collective for settlement purposes shall not be admissible in any

judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including without limitation any wage and hour litigation against any Defendant.

### ii. Settlement Consideration

If the Settlement is finally approved, Defendant shall cause the total of $1,390,000.00 (the "Settlement Payment") to be wired into an interest-bearing escrow account designated by Plaintiff to be under the control of a third-party Settlement Administrator selected by Plaintiff. *See* Settlement Agreement at §4.

This Settlement Payment represents a negotiated amount for back wages and the liquidated damages available under the FLSA and the back wages, liquidated damages and penalties available under all applicable state laws and for payment of all legal fees, expenses and service payments sought by Plaintiffs' counsel.

### iii. Allocation of Settlement

The Settlement Payment shall be allocated as followed:

- Settlement payments to members of the collective who timely submit Claim Forms (consents to join and releases) *(see* Settlement Agreement at §9).

- A service payment of $5,000 to Plaintiff Leah Isbell for bringing this action (*see* Settlement Agreement at §6).

- A fee to Plaintiff's counsel for their time spent litigating this case, not to exceed 33.33% of the total settlement amount (*see* Settlement Agreement at §5);

- A fee to the Settlement Administrator, which will be no greater than $49,000 (*see* Settlement Agreement at §7); and

- Reimbursement to Plaintiff's counsel for costs and expenses incurred in prosecuting the case(*see* Settlement Agreement at §5)..

5

The Settlement Payment amount, less amounts awarded by the Court for Plaintiff's Counsel's attorneys' fees and costs, for the Service Payment to the Plaintiff, and for payment of fees to the Settlement Administrator, is the Net Settlement Fund. Each collective member who submits a Claim Form and joins the collective will receive an amount representing their pro-rata share of the Net Settlement Fund based on his/her/their weeks of employment for Polaris, Inc. from May 17, 2019 to April 6, 2023, subject to a $50.00 minimum payment. The pro rata share will also include a premium of $25 to each member of the Collective employed by Polaris at any time during the Kronos Outage period. *See* Settlement Agreement at §9.

### iv. Attorneys' Fees & Costs

Plaintiffs' Counsel may petition the Court for an award of attorneys' fees and costs in conjunction with the Parties' settlement. Defendants will not oppose any request by Plaintiffs' Counsel for an award of attorneys' fees does not exceed one-third (33%) of the Settlement Payment Amount. *See* Settlement Agreement at §5.

### v. Service Payment

Plaintiffs' Counsel may also petition for an award of a Service Payment to Plaintiff Isbell. Defendants will not oppose any request by Plaintiff's Counsel for a Service Payment of up to $5,000. *See* Settlement Agreement at §6.

### vi. Settlement Administrator

The Parties have agreed that CPT Group, Inc. (the "Settlement Administrator") shall serve as the administrator of the settlement and will ask the Court to approve this selection in the Parties' proposed Final Approval Order. The Settlement Administrator

6

will perform services, including, without limitation, establishing and maintaining a QSF; paying from the QSF the amount of attorneys' fees, costs and expenses awarded to Plaintiffs' Counsel; distributing any Court-approved Service Payment to Isbell from the QSF; dissemination of notices of this settlement to the members of the Settlement FLSA Collective; providing reports to the Parties on a periodic basis of the identity of the Settlement FLSA Collective members who timely submit Claim Forms; calculating the Settlement Payments allocated to each Settlement FLSA Collective member based on the criteria set forth in this Agreement and the workweek information provided by Polaris; calculating and disbursing payment of appropriate taxes to be paid under the settlement from the QSF (including the employer taxes due from Polaris in addition to the Settlement Payment Amount); complying with all applicable tax reporting obligations including issuing 1099s and W-2s to participating Settlement FLSA Collective members and Isbell; preparing and filing all applicable tax forms and amendments or modifications required thereto; distribution of the settlement checks to the participating Settlement FLSA Collective members; compiling copies of tendered settlement checks and providing those copies to Polaris; notifying Polaris' Counsel of any participating Settlement FLSA Collective members who have not cashed their settlement checks within the check cashing period defined in Section 9; issuing a stop-payment directive with the applicable bank with respect to those settlement checks; providing the Claim Forms submitted by the participating Settlement FLSA Collective members Plaintiffs' Counsel to be filed with the Court; preparing a declaration regarding its due diligence in the claims administration process, as well as other activities attendant upon effectuating

the Settlement. See Settlement Agreement at §7.

### vii. Claim Form and Releases

Upon approval of the Settlement by the Court, the Settlement Administrator will transmit by email and First-Class U.S. Mail the Notice and Claim Form (attached as Exhibit A to the Settlement Agreement; see also Settlement Agreement at §8).

The proposed Notice informs the putative collective members as to the nature of the suit, why they are receiving the notice, the terms of the Settlement, an estimate of their personal share of the Settlement, and the steps required to participate in the Settlement. Each putative member of the collective who receives notice must return a completed Claim Form within 60 days in order to participate in the Settlement.

Each completed Claim Form will certify that the individual: 1) is choosing to opt into the FLSA collective, 2) wishes to participate in the Settlement, and 3) releases Polaris from all state and federal claims that relate to or arise under the facts alleged in the First Amended Complaint filed in this case, for a period from May 17, 2019 to the present, including but not limited to claims for overtime wages, straight-time wages, and minimum wages, and any associated claims for liquidated damages, punitive damages, penalties, costs, expenses, interest, attorneys' fees, equitable or injunctive relief, or other remedies.

### viii. Court Approval, Notice, and Distribution of Settlement

All terms of this Stipulation and the attached Settlement Agreement are contingent upon the approval of the Parties' Settlement and certification by the Court of the FLSA Collective for settlement purposes only.

For purposes of this Agreement, "Final Approval" shall be deemed to occur upon the issuance of a Court order (the "Final Approval Order") that (1) approves the settlement; (2) conditionally certifies the proposed FLSA Collective pursuant to Section 216(b) for settlement purposes only; (3) approves, and directs distribution of, the proposed Notice, Claim Form, and Release to the Putative FLSA collective members; and (4) dismisses the action and enters final judgment. The Parties' proposed Final Approval Order is attached as Exhibit B to the Settlement Agreement. The Parties agree to cooperate and take all steps necessary and appropriate to obtain a Final Approval Order, and otherwise effectuate all aspects of this Agreement. *Id.*

### ix. Dismissal of Action

The Final Approval Order shall provide that the action shall be dismissed with prejudice and without costs (except as otherwise provided herein) with the Court retaining jurisdiction over the case for purposes of the completion of the administration of this Settlement, ensuring compliance with the terms of this Settlement Agreement and any order of the Court issued in connection therewith. *See* Settlement Agreement at §11.

### x. Miscellaneous Provisions

#### 1. Complete Agreement

The Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Stipulation or attached Settlement Agreement and that they are competent to execute this Stipulation and accept full responsibility therefore. This Stipulation and Settlement Agreement contain and constitute the entire understanding and agreement between the Parties and supersedes all

previous oral and written negotiations, agreements, commitments, and writings in connection therewith. *See* Settlement Agreement at §12.

### 2. Dispute Resolution

The Parties agree to meet and confer in good faith to resolve any disagreements over the implementation of the terms of this Agreement or any other documents necessary to effectuate the Settlement. *See* Settlement Agreement at §13.

### 3. Knowing and Voluntary Agreement

The Parties agree that they are entering into this Stipulation knowingly, voluntarily, and with full knowledge of its significance. *See* Settlement Agreement at §5.

### 4. Authority

Each signatory to this Stipulation represents that they are duly authorized to sign for the party or parties they purport to represent. *See* Settlement Agreement at §16.

### 5. Severability

If any part of this Stipulation is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Stipulation, which shall be construed, reformed and enforced to effect the purposes thereof to the fullest extent permitted by law. If one or more of the provisions contained in this Stipulation shall for any reason be held to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable at law, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent under the applicable law. *See* Settlement Agreement at §17.

## 6. Governing Law

This Stipulation shall be governed by Minnesota law, without regard to that state's choice of law provisions or any other jurisdiction, and, when applicable, the laws of the United States, irrespective of where any action may arise or whether any jurisdiction other than Minnesota has accepted jurisdiction of this matter. The Parties also hereby submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of the terms of this Agreement. *See* Settlement Agreement at §18.

## 7. Binding on Successors and Assigns

This Stipulation shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, issue, next-of-kin, executors, administrators, successors, and assigns. *See* Settlement Agreement at §19.

## 8. Counterparts

This Stipulation may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signer counterparts, shall constitute one Agreement, which shall be binding upon and effective as to the Parties. Execution by facsimile, electronic signature, email or other electronic means shall be deemed effective as if executed in original. *See* Settlement Agreement at §20.

**IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Stipulation to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

_/s/_ _____

Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
jeff@klafterlesser.com

Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

Timothy Becker
Jacob R. Rusch
JOHNSON BECKER, PLLC
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Tel: (612) 436-1800
Fax: (612) 436-1801
Email: tbecker@Johnsonbecker.com
jrusch@Johnsonbecker.com

ATTORNEYS FOR PLAINTIFFS
4861-4296-9711.1 / 103451-1002

_/s/_ _____

John H. Lassetter, Bar No. 0389009
    jlassetter@littler.com
LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
    Minneapolis, MN 55402.2136
Telephone: 612.630.1000
Facsimile: 612.630.9626

ATTORNEYS FOR DEFENDANT