UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Leah Isbell, *on behalf of herself and all others similarly situated,* | Case No. 22-cv-1322 (WMW/DJF) |
| Plaintiff, | **ORDER** |
| v. | |
| Polaris, Inc., | |
| Defendant. | |

Before the Court is the Plaintiffs' motion for approval of settlement, attorneys' fees and costs and entry of final judgment brought pursuant to the Fair Labor Standards Act ("FLSA"). (Dkt. 61.) For the reasons addressed below, the motion is granted.

## BACKGROUND

Plaintiff Leah Isbell is an Alabama resident who, at all times relevant to this lawsuit, worked at Defendant Polaris, Inc.'s ("Polaris") Alabama facility. Polaris is a Minnesota corporation that is a producer and supplier of motorcycles, ATVs, boats, and other recreational vehicles and parts. Isbell commenced this action on behalf of herself and all others similarly situated ("the collective") in May 2022, alleging that Polaris failed to properly compensate members of the collective for all hours worked per workweek due to (1) Polaris's timekeeping and rounding practices throughout the statutory period and (2) the approximately two-month outage of the Kronos timekeeping system used by Polaris beginning in December 2021 in violation of the FLSA and other federal and state statutes.

The parties reached a settlement after a full-day mediation conference held by an experienced mediator, Lynn Cohn. On July 7, 2023, Isbell filed an unopposed motion, seeking the Court's approval of the parties' agreement to settle the claims alleged in the amended complaint. For settlement purposes only, the parties stipulated that the proposed collective who will be affected by the settlement will be "[a]ll individuals employed by Polaris, Inc. in its Huntsville, AL facility, from May 17, 2019, to the present and who were paid on an hourly basis and who are identified in the data produced by Defendant to Plaintiff for purposes of facilitating settlement discussions." (Dkt. 62 at 4.) As part of the settlement agreement, Polaris will pay $1,390,000 into a common fund, which will be distributed pro-rata to class members based on their time employed with Polaris. Isbell also seeks payment of attorneys' fees, expenses and a service award.

## ANALYSIS

The United States Court of Appeals for the Eighth Circuit has not determined whether judicial approval is required for all FLSA settlements. *See Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019).[1] This Court assumes, without deciding, that its approval is required.

When a district court reviews a proposed FLSA settlement, it may approve the settlement agreement if (1) the litigation involves a bona fide dispute and (2) the proposed

---

[1] "There is a circuit split on whether to extend older Supreme Court cases so as to require judicial approval of *all* FLSA settlements. A pair of cases from the 1940s require judicial approval for some releases of FLSA claims, but those cases left open the question of whether the FLSA requires judicial approval to settle bona fide disputes over hours worked or wages owed." *Barbee*, 927 F.3d at 1026. The Eighth Circuit has "never taken a side on this issue." *Id.* at 1027.

settlement is fair and equitable to all parties. *Stainbrook v. Minn. Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982) (holding that a district court evaluating an FLSA settlement must "scrutinize[e] the settlement for fairness"). A settlement involves a bona fide dispute when it pertains to issues that are actually in dispute. *Stainbrook*, 239 F. Supp. 3d at 1126. "To determine whether settlement terms are fair and equitable to all parties, a district court may consider a multitude of factors, including the stage of the litigation and the amount of discovery exchanged, the experience of counsel, the probability of the plaintiff's success on the merits, any overreaching by the employer in the settlement negotiations, and whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case." *Id.*

In her complaint, Isbell alleges that Polaris violated the FLSA and that Polaris owes her and other employees unpaid overtime wages. Polaris denies that it owes any wages or damages to Isbell or any other Polaris employee. Accordingly, the litigation involves a *bona fide* dispute.

The parties represent that they exchanged extensive discovery, which included extensive payroll data and information relevant to Isbell's claims. The parties participated in a full-day mediation before Lynn P. Cohn, a law professor at Northwestern University's Prizker School of Law, and represent that they engaged in extensive settlement negotiations before the settlement conference as well. Cohn mediated the parties' settlement, which supports the parties' assertion that the settlement was the product of arm's-length negotiations and did not involve overreaching by the employer. *See Netzel v. W. Shore*

3

*Grp., Inc.*, No. 16-cv-2552 (RHK/LIB), 2017 WL 1906955, at *6 (D. Minn. May 8, 2017) ("Courts have held that negotiations involving counsel and a mediator, like the present case, raise a presumption of reasonableness.").

Both parties are represented by counsel with extensive experience in complex employment litigation. The parties disagree as to Isbell's likelihood of success on the merits but agree that a settlement is reasonable given the uncertainty and delay inherent in proceeding to trial. To resolve this case, Polaris seeks to establish a common fund that will be used to pay for the settlement of overtime claims and other claims that were asserted in the lawsuit. This was not an overreach by Polaris because Polaris employees may opt-in and file their own claims, if they choose to do so, without any foreclosure of their rights to pursue overtime or employee benefits claims, or any other claims, if they choose not to do so. *McInnis v. Ecolab Inc.*, No. 11-cv-02196 (SRN/JJK), 2012 WL 892187, at *4 (D. Minn. Feb. 17, 2012).

Accordingly, the parties have established that the settlement agreement is fair and equitable to all parties.

**II.  Attorneys' Fees and Expenses**

As part of the settlement, Isbell also seeks $463,333.33 in attorneys' fees and $39,132.49 in expenses.

In common-fund settlements, the United States Court of Appeals for the Eighth Circuit has approved the percentage-of-recovery methodology in reviewing fee requests. *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002). The percentage-of-recovery method "permits an award of fees that is equal to some fraction of the common

fund that the attorneys were successful in [producing] during the course of litigation." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244-45 (8th Cir. 1996). In addition to looking at the requested percentage, courts will often employ the "lodestar" approach to determine the reasonableness of the attorneys' fees award. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017).

The amount of attorneys' fees that Isbell seeks is 33.33% of the total settlement amount. An award of one-third of the settlement is common in the Eighth Circuit, as courts have routinely awarded attorneys' fees ranging from 25% to 36% of a common fund under the percentage-of-the-fund method. *Larson v. Allina Health Sys.*, No. 17-cv-03835(SRN/TNL), 2020 WL 2611633, at *2 (D. Minn. May 22, 2020); *see also Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010) (approving attorneys' fees of 33% of the common fund); *Huyer v. Buckley*, 849 F.3d 395, 398-400 (8th Cir. 2017) (approving 36% fee request, listing cases).

Moreover, Isbell's counsel has submitted time records to support the reasonableness of the fee request. Those records show that Plaintiffs' lead counsel's fees and expenses, calculated on an hourly basis at hourly rates that would be reasonable for this type of complex litigation, to date are $327,121. Compared to the requested amount, the fee constitutes a lodestar multiplier of 1.42, which is below the range of multipliers accepted in other cases. *See Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2016 WL 1637039, at *11 (D. Minn. Apr. 5, 2016) (explaining that multipliers range between two and five).

In addition, a district court may award "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client." *Sturgill v. United Parcel Service, Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008). Isbell's counsel contends that the expenses incurred were for filing fees, postage, online research, outreach, and mediation. These costs and expenses were billed separately by Plaintiffs' counsel, with no guarantee of recovery. Upon review, the Court concludes that these expenses are reasonable and relevant to the litigation. *See Yarrington*, 697 F. Supp. 2d at 1067. For those reasons, Isbell's motion for $463,333.33 in attorneys' fees and $39,132.49 in expenses is granted.

### III. Service Award

Isbell seeks a service award of $5,000. Small incentive awards, serve as premiums to any claims-based recovery from the Settlement and promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See Yarrington*, 697 F.Supp.2d at 1068. Unlike unnamed collective members who will enjoy the benefits of the settlement without taking on any significant role, Isbell made significant efforts on behalf of the collective and participated actively in the litigation, including time and effort in bringing this action. Under these circumstances, a service award of $5,000 is reasonable. *See, e.g.*, *Netzel*, 2017 WL 1906955, at *7 (finding $5,000 service award to one named plaintiff and $3,000 to another was reasonable); *Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp.2d 1075, 1085 (D. Minn. 2009) (awarding two lead plaintiffs $15,000 incentive awards from a common fund settlement of $17,000,000); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn.

2005) (awarding $100,000 collectively to a group of eight lead plaintiffs).  In light of the effort and risks undertaken to obtain the results for the collective, the Court approves the $5,000 service award payment to Isbell.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. The parties' motion for approval of settlement, (Dkt. 61), is **GRANTED**.

2. The matter is **DISMISSED WITH PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  October 11, 2023

s/ Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge